Good morning, Your Honors. Brett Weaver on behalf of Plaintiff David Tourgeman, Plaintiff and Apollo David Tourgeman and the certified class. I'd like to reserve four minutes of my time for rebuttal. All right. Nearly four years ago, almost to the day, I stood at the podium in courtroom two and I convinced a different panel of this court that identifying the wrong original creditor in a collection letter created a material risk of harm to a debtor. Even if your client never got the letter? Specifically, that's what the court said, is that the fact that he didn't get the letter still created the material risk of harm because the FDCPA, the point of the FDCPA was to prevent the sending of misrepresentations. So how do you distinguish Judge McEwen's decision in the auto park receipt case? The Bassett ABM? In two ways. And the first is that, one, the information as Congress had already found was immaterial. Having a credit card receipt that just had, just excluded, or sorry, just showed the expiration date, but not the credit card numbers. You could hand that to the greatest identity thief in the world and there was nothing they could do with it. But it's a technical violation of the statute, is it not? That was a hyper-technical violation of the statute. The result would have been different. It's either a violation or it is not. But Congress had- You agree it's a violation? I agree. And Congress issued a clarifying act. So your argument, I mean, we found there that there was no harm from that violation. And the question here is how was he harmed when the letter was never seen by your client? Because it's a different sort of circumstance. In that case, the point of that law was to keep information away from identity thieves, or people who could misuse it. And so there was never a chance because he actually got it. It would have been a different- That's a factual issue as to how damaged, the nexus between the violation and actual injury. And I'm still having a hard time distinguishing our prior precedent that requires that nexus. What the difference here is, is it wasn't just that they sent it out in the ether sphere. They targeted him as we found, the court found last time. They put the letter in an envelope. They put the proper postage on it. They sent it to his parents' last known address, to his last known address where his parents still live. And in fact, Nelson and Carrard throughout this entire case has argued he must have received it because they took these steps. But your client says he never saw it and the parents say we never received it. So there's no evidence in the record that anybody ever looked at this letter. Correct, and we don't dispute that. But we're saying that Spokeo doesn't require that he actually sees it. In fact, if you look at Spokeo 3 on remand, there's no evidence or allegation that anyone- What's the nexus between the technical violation of the statute and actual injury here? That's what I'm troubling. And respectfully, Your Honor, we don't need to prove an actual injury. As the Supreme Court made clear in Spokeo 2 and this Court made clear in Spokeo 3, a risk of harm is sufficient to create a concrete injury. Let me clarify that argument because I'm looking at Spokeo in 2016 where the Supreme Court said it has to be both concrete, the injury, in fact, must be both concrete and particularized. A concrete injury must be de facto. That is, it must actually exist. When we have used the adjective concrete, we have meant to convey the usual meaning of the term. That means essentially the injury has to be real and not abstract. So what I see here is a potential procedural violation. But what I'm missing is whether it meets the definition, as the Supreme Court has indicated, of a concrete injury, meaning a real injury. And I don't know how you can have a real concrete injury if you don't see the letters. Well, about two sentences later. It's out there in the ether somewhere. But about two sentences later, Justice Alito made clear that the risk of a real harm could create, was an actual injury. The risk. And I think that's the key word there. Rejected that argument in the ABM parking case that there might be a risk of potential identity theft, but no identity thief ever saw this information. But again, put away that part of the decision. Even if an identity theft got, no, no. Ignore binding precedent because it's inconvenient? I'm not sure I understand your argument. There was two basically holdings there. The central holding, in my opinion, is the reason why there was no risk is because it didn't have the sensitive information. It had information that Congress had already said and a clearing eye effect was immaterial. That's different from this case where this court has already said the information was material. And it was only by happenstance that he didn't get it. And essentially what this court did before is it judged risks sort of by hindsight. And I don't think that's how you judge risk. If I were to run across the I-5 freeway and not get hit, no one would say that I was never at risk. I think you'd all say I was incredibly lucky. And that's what happened here. Nelson Aguilar got incredibly lucky that he didn't receive that letter. And had he received that letter- You knew you were running across the freeway. I'm sorry? You knew you were running across the freeway. Here he didn't even know he received the letter. I think it's a silly argument, but let's move on to another question that I have. If we reject your argument on shifting the burden of net worth to the defendants, isn't the case finally over? Yes. And if you reject? Well, not if you accept the argument on the Article III standing. Right. So why do you address that argument? Who has the burden of proof with regards to the defendant's net worth? Sure. I think the district court, in placing the burden on Tershman, ignored three basic rules of evidence. And the first one being that whoever, when an issue in yours to the benefit of one party, the burden is properly placed on that party. This damages cap is put there purely for the defendant's benefit. So that's the first part. The second, and I think maybe the more important provision, is when the one party has superior access to information, that burden, that party should rightfully have the burden. But you had plenty of opportunity to discover that information, did you not? You could have propounded interrogatories, taken depositions. And we did, Your Honor. Yeah. And up to a point, but again, I think you could say that in every case. You would always have an opportunity to propound discovery to get someone's medical information. You'd always have opportunity to propound discovery to see if a patent violation was willful. The point being, and this is a widely recognized rule, that when one party has superior access, it should be that party. And again- If it's an element of the offense though, or the element of the claim, then the burden would be on the plaintiff. So let me ask you this. If you were to proceed to trial on a case like this, with the issue of damages, statutory damages, the half a million dollars, 1% of defendant net worth, whichever is less, is that something that's submitted to the jury? Yes. So that's something that you're affirmatively presenting and asking the finder of fact to determine? Just to be clear, we're not saying we don't have to prove our entitlement to statutory damages. We had every intention of going through- I'm trying to figure out how the case would be tried, because that in part may provide the answers who has the ultimate burden of proof. Because if you were to proceed to trial on a case like this, and you would have to basically present the entitlement to statutory damages to a jury, and ask a finder of fact to say, I'm entitled to half a million dollars because their net worth is greater than that, or I'm entitled to 1% of their net worth, because that's more- But I don't think we would ask- If that's the case, the defense is entitled to basically just sit back and say, well, I don't think you've proved your case. I don't have to put on any sort of a case. That may provide the answers to who's got the burden of proof. That's where I'm going with the trial question. Sure. And I don't think we would have to prove which damages cap. We would have to prove, and we'd go through 1692 K2B, which are the factors. And we would say, you know, the resources of the debt collector, the persistence, the frequency, and the jury would come up with a number. So how is- What evidence are you going to give to the jury so that they can formulate the number? Again, we'll go through and we'll talk about the nature of the noncompliance. We'll try to prove that this was a serious violation. We're talking money. What evidence does the jury hear in order to determine whether or not the amount of damages exceeds the lesser of $500,000 or 1% of the net worth of the debt collector? And that's where I'm saying the defendant would have to give up. After the jury has issued an award, or has come up with- What I hear you saying is that we're going to apply the black box theory, that I'm going to show that there was a technical violation of the statute, and then I'm going to ask the jury to pick a number between one and $500,000, and whatever number the black box kicks out is going to be the damages award. But what evidence does the jury get from you in order to help it determine what the appropriate measure of damages is? Again, in any case where you're seeking only the additional damages under the statute, there's no number you can point to. There's no medical expenses. There is. You can hire a forensic accountant. You can conduct appropriate discovery. The certified accountant gives you his opinion as to the net worth of the business, and you submit that evidence to the jury, and if the jury agrees with that evidence, and you're an expert, you get the maximum amount under the statute. Isn't that your burden on damages? I think, again, that's putting the cart before the horse, because before- It's called evidence before the jury. Before we even present, what we're saying is before we even decide whether we're entitled to damages, we have to decide what the maximum damages are. Counsel, in a personal injury case, you can't just come in and say, my client was run over by the defendant, and therefore I want a million dollars. You got to give the jury some evidence in order to pick the right number. Here, you're not giving the jury anything other than an argument that the defendant violated the statute. But this isn't a personal injury case. There's a statute that says we're entitled to damages. I think I understand your argument. What you're saying is that if you had to try a case like this, you would basically be asking the jury to award statutory damages based on the factors that are laid out, among which include, essentially, the egregiousness of the violations. You're essentially arguing to the jury, look at the frequency and persistence of noncompliance, look at the extent to which the noncompliance was intentional, look at the nature of the noncompliance, things of that sort, right? And then the jury would come up with a number, and then perhaps have the court cap it or something like that. So, as I understand your argument, you don't have to basically prove up the net worth because there are these factors that you can throw out for the jury to consider in determining how much statutory award to be damages. The only problem I have, did I understand your argument correctly? Correct. And the only problem I have with that argument is that among the statutory factors that you need to throw out for the jury to consider is the resources of the debt collector. And so, without understanding or some discovery on what the defendant's company is worth, it's hard to give the jury a full picture of all these statutory factors to consider in determining the amount of damages. And first of all, that's just one of several factors. There's no requirement that you prove all factors. Second- But doesn't your argument turn net worth into an affirmative defense? It turns it into a damages cap, which is damages caps are traditionally, because they're for the benefit of the defendant, it's the defendant's burden to prove, not an affirmative defense. What, as Judge Nguyen pointed out, we're gonna ask the jury to come up with a number, and say they come up with a number of $501,000. It's then up to the defendant to say, well, no, no, it shouldn't be- Yeah, but you can't just omit one of the considerations from the statute. Again, the resources? First of all, that's different from, resources is different from net worth, and you'll note it doesn't say financial resources. It just says resources, which can mean a lot of things. It could mean the number of employees they have. It could be the number of computers and telephones that they have. Mr. Weaver, you have zero evidence that there's a positive net worth in all the discovery you did. No, I disagree, Your Honor. We do have evidence that there's a positive net worth. What the debate came down to, whether you value the distributions, the several million dollars of distributions to the partner as a liability, so you could have a negative net worth. In our position, you shouldn't do that, and that's where this whole issue of who has the burden came up. All right, you're down to two minutes. I'll reserve the rest of my time. Thank you. May it please the Court, good morning. I'm Tommy Onorita from Simmons Onorita in San Francisco. I'm here for the defendant, Danapelli, Nelson, and Kennard. And as I can see, you already know, we've been very busy in the four years since we were last here, and a lot has happened. The most significant thing that we think has happened is that the case ended, and we think that happened on July 15th, 2016. On that day, we were one day before the start of a jury trial. It was a Friday, and the jury trial was supposed to start on Monday. And on that day, Mr. Tershman got a ruling that he did not like. The Court held that he bore the burden of proof on the net worth issue that we were just discussing, and since he didn't have evidence sufficient to show the net worth of the defendant,  Now, he had two options to appeal that ruling at that point if he wanted to. Number one, he could have gone to trial. It was set for Monday, and it was only supposed to last a couple days. And then after the trial was over, he could have appealed from the final order, and he would have been able to challenge the judge's ruling. Number two, he could have asked the Court to certify the issue under 1292B, and say, hey, this is a unique issue. Please give me discretion to appeal, and then he could have asked this Court if they agreed. Either one of those things would have been fine, but he did neither. Instead, he turned around and said, I'm dismissing my entire case right now with prejudice, and then I'll see what the Ninth Circuit says about all this. And this case is really controlled by the Supreme Court's decision in Microsoft v. Baker. And it almost doesn't matter, Your Honors, whether you look at the majority opinion in Microsoft, which did the analysis under 1291, and found that it wasn't a final appealable order, or if you use the analysis that Judge Thomas did in his concurring opinion under Article III. Under either analysis, Microsoft controls, and the Court should dismiss the entire appeal for lack of jurisdiction. It's, I mean. You know we have a backup argument. I'm sure you do. I sure do, Your Honor. Is it something the Court would like me to address? I'm happy to address anything that's on the Court's mind. I do believe, for the reasons stated. I'm interested in the damages issue. Yes. And why the burden should be on the plaintiff rather than you. And was there any evidence ever of any positive net worth? Well, to your last question, no. There was no evidence of positive net worth. After this Court reversed in 2012, we went back down to the District Court, and Mr. Tershman asked for discovery on net worth. I objected, and I said, whoa, whoa, whoa. Discovery closed a couple years ago. It's too late, and the District Court overruled me and allowed for extensive discovery on net worth. Mr. Kennard was deposed. Tax returns were turned over. Checking accounts, checks, financial information. And after all that extensive discovery, we got our way to trial. And the day before trial, Mr. Tershman announces, hey, it's their burden to show net worth, and so I can't prove it, but it's their burden, and so put it on them, and the Court disagreed. But there was plenty of evidence regarding net worth. The problem for Mr. Tershman was they all pointed to the fact that it was substantially negative, and that's why he didn't want it to be his burden. Well, let me ask you about the District Court's opinion, which I generally think got it right, except it kind of implies that you need a CPA in order to prove the net worth. I don't see why that would be. I don't see why the plaintiff needed a CPA. There's a whole lot of ways you could prove net worth. I agree with you, Your Honor. I don't, I mean. And maybe that was just an example, but it didn't appear to be just an example. It appeared to be kind of a requirement to prove net worth, and I didn't think that was right. Well, I believe what the District Court was referring to is the only appellate decision I'm aware of that's chimed in on this is the Saunders case out of the Seventh Circuit. And in that case, the Seventh Circuit said, look, if you want to determine net worth, what you do is you look at the book value of the defendant, and that you can look at certified financials to do that. That's probably where she was getting that language. But not all companies have certified financial statements. There's other ways of demonstrating net worth depending on what type of entity it is and how they keep it. Like the deposition. The lawyer could have admitted positive net worth. It didn't happen, but. That's right. Can you address the Hernandez-Miranda case from the First Circuit? It's in the Title VII context, but why doesn't the reasoning apply equally in this case? Because, Your Honor, thank you for asking. The statutory scheme under Title VII in the Hernandez case is quite different than here under the FDCPA. There you have the caps that are sort of lurking out there, but there's a sort of a phase one of the trial where you go forward and the plaintiff bears the burden of proof to demonstrate that there is damage of some amount. And if, and only if, the plaintiff is able to do that, the jury's excused. Then there's this second proceeding where the judge hears evidence on whether the caps apply and where the caps fall. During that second proceeding, the defendant bears the burden of proof. Aren't the caps under Title VII an affirmative defense? I think that's correct, Your Honor. And the only affirmative defense under the FDCPA is the bona fide error defense. That's it. This is not an affirmative defense. So the structure in the Hernandez case, the First Circuit case under Title VII is quite different. And so Congress showed under this particular statute, if they wanted to make it an affirmative defense, they could have. They know how to do it. And they didn't. That's correct. Kind of end of story. That's what we think. End of case. The case would be over. We think the case, we don't think it can be appealed, but to the extent it can be appealed, the net worth issue, the district court got correct. On the claim about the letter, the Article III claim on the letter, we think the court also got that correct. You start by looking at what statute did Mr. Terjeman invoke for his claim for relief. And what he invoked was 1692E of the FDCPA. And then you ask, what is the kind of concrete harm that Congress was trying to prevent with that statute? You've got the better argument on the letter-based claim. Thank you, Your Honor. If there's no other questions from the panel, I will. The better claim was the complaint, but he dismissed that. That's correct. I mean, there was actual harm, concrete. That's what was alleged. And the district court so helped. There's nothing further, Your Honor. Thank you very much, Counsel. I think you've got a couple of minutes, Counsel. Thank you, Your Honor. Just to start briefly with this Microsoft versus Baker. There's a huge difference between that case and this case. That was a certified class action. This case was not. I'm sorry, that case was not a certified class action. This case was. And it was never decertified. The court never went through and changed its mind about numerosity or accuracy or typicality. We couldn't have appealed under Rule 23F. So that was not the option. And going to trial on just an individual claim runs counter to what the court said to Microsoft, because then you're guaranteeing piecemeal appeals, because even if we won, we'd have to come back down to our, or we'd appeal the Article III issue, even though it doesn't look like there's much chance of success on that. In terms of the financial information, and Mr. Tomia or Mr. Narita is correct that after we got back, we fought for that. And we did have to fight, which is one of the reasons why the burden should be put on them again, because you're ensuring unnecessary discovery battles if you put it on us. But we got information, and we believe we did prove a positive net worth, and they admitted a positive net worth, because what it was, was they made several million dollars more a year than their expenses. I thought in response to Judge Bennett's initial question, you had indicated that if the burden of proof is on you, then this case would essentially end. Did I misunderstand that? Well, if you don't- I thought that was concession that there would be insufficient evidence of net worth to go forward, but maybe I misconstrued your answer in his question. Maybe I misconstrued the question. And that is to say, if the burden of proof is on us, and we're not allowed to present evidence without a certified public accountant, or that satisfies the standards of GAAP, then yes, I think the case would be over. I thought you took the position before Judge Ben Savingo, that you didn't have to introduce any evidence as to net worth. That was the burden on the defendants, not the plaintiff. Well, it wasn't our, it was our contention that they had to go first, and they had to produce that evidence. And had they produced evidence, we would certainly have the burden to combat that evidence. But they didn't have it- You didn't tell the district court that you were prepared to go forward with evidence on net worth, did you? You simply said, it's not my responsibility. It's not an element I have to prove. No, I don't think that's true, Your Honor. We did tell the district court that we weren't prepared because- That you were not prepared. Yes, because we didn't have, under the standard that she had established, of proving that these distributions should be considered or not considered. She felt that that required expert testimony, and we didn't have an expert on that subject. Well, that is a pretty technical, I guess it's a taxation issue more than anything else. And again, that's why it came down to whose burden it was. It was our position that they were going to fail their burden of proving that negative net worth because they didn't designate an expert. Well, let me ask you about your discovery issue. Even if the burden was on the defendant, you'd still have to discover what their position was with regard to net worth. So it doesn't eliminate discovery, as you suggested. I think there's a less chance because if truly, if the burden's on them and they truly do have a negative net worth or a very, very small net worth, they have an incentive, even before the initial disclosures, to open up the kimono and say, here's the information. And if it's credible, then no attorney's going to proceed with the case as a class action. So that's why I think it's in the benefit. It benefits the policy, all the policies involved, of putting the burden on them. On the Title VII analogy, I'm embarrassed that I don't recall because I used to do a lot of Title VII work. But aren't those caps affirmative? Haven't the courts held that those are affirmative defenses or not? I just don't recall. Your Honor, I've never done a Title VII case, so I don't know. But I would say is, when we talk about the elements, the cases, time and time again, when they describe the elements of an FDCPA claim, it's, was it a debt collector? Was it a consumer debt? Did it violate the statute? There's no then element that says, you have an element of proving the additional damages and the net worth of the defendant. So I disagree that it's necessarily an element. Well, then what's this language in 1692? What is it? A to B. Isn't that where we find the language? Then those are the elements, which are the factors you would consider, which are the numerosity. The elements of establishing damage. Correct. But it doesn't say that establishing the net worth is an element. Isn't that burden on the plaintiff? And again, we've never claimed that we don't have the burden to go through the frequency and persistence, the nature of noncompliance, the resources of the defendant. We had every intention of stepping up and doing that first. And then if they wanted to say, Dan, damages are capped at 1% of our net worth, and we have a negative net worth, so damages are zero, that was their burden to do. Unless the court has any questions. All right. Thank you very much. That matter is submitted for a secession by the court. Now we get to the last case set for our.
judges: Tallman, Nguyen, Bennett